30 F.3d 133
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James EVERSOLE, Petitioner-Appellant,
v.
SHAMROCK COAL COMPANY, INC., and Director, OWCP,
Respondents-Appellees.
 No. 93-3527.
 United States Court of Appeals, Sixth Circuit.
 July 18, 1994.
 
 Before: GUY and BOGGS, Circuit Judges; and WOODS, Senior District Judge*.
 PER CURIAM.
 
 
 1
 Petitioner James Eversole appeals from an order of the Benefits Review Board which affirmed the decision of the Administrative Law Judge ("ALJ") denying his claim for benefits under the Black Lung Benefits Act. Eversole argues that the Board erred when it concluded that he failed to brief adequately his challenge to the ALJ's finding, as required by 20 C.F.R. Sec. 802.211(b). In addition, Eversole charges that the ALJ did not accord proper weight to the medical opinions of Drs. Bushey, Anderson and Baker. While Eversole did adequately brief his challenge to the ALJ's findings, we conclude that the ALJ's findings are supported by substantial evidence, and therefore, we affirm the Board's order.
 
 I.
 
 2
 On December 13, 1988, Eversole filed a claim for benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. Sec. 901 et seq. (1988). The claim was denied by the District Director on May 16, 1989, and again on July 18, 1989. The ALJ held a formal hearing on Eversole's claim on October 24, 1990.
 
 
 3
 James Eversole was born on February 27, 1936, and has an eighth grade education. At the hearing, Eversole testified that he worked 32 years in the coal mining industry and that his last coal mine employment was with the Shamrock Coal Company. His last day of coal mining was January 24, 1984. Eversole described the physical activity involved in his former job as conveyor operator as requiring him to sit for three hours per day, stand for five hours per day, lift fifteen pounds three times per day and carry 25 pounds 15-20 feet once per day. Eversole testified that he suffers from shortness of breath and "smothering." He also acknowledged that he smoked cigarettes for four years, but quit his 1 1/2 pack per day habit twenty years ago.
 
 
 4
 The medical opinions and test results from five physicians are included in the record. Dr. Harold Bushey, Eversole's treating physician, performed an examination on January 13, 1984. Respiratory capacity tests were inadequate to establish total disability under the guidelines, but on the basis of x-rays Dr. Bushey diagnosed "chronic lung disease with pulmonary fibrosis, compatible with coalworker's pneumoconiosis...." Dr. Bushey opined that claimant should not be exposed further to the dust in the coal mining industry.
 
 
 5
 On May 3, 1984, Eversole was examined by Richard P. O'Neill, M.D., at the request of the Department of Labor. Dr. O'Neill noted a 20 year smoking history of 1 1/2 packs per day and a 30 year coal mine employment history. Pulmonary tests were invalid due to inadequate effort, and Eversole's other test results were within normal range. On the basis of this examination, Dr. O'Neill reported the following diagnoses: 1) Chronic bronchitis; 2) No evidence of pneumoconiosis; 3) History of myocardial infarction; 4) History of hypertension; 5) Overweight.
 
 
 6
 On May 21, 1984, Eversole was examined by Dr. Bruce Broudy at the request of Shamrock Coal Company. Dr. Broudy noted a 30 year coal mining employment history and that Eversole was "an ex-smoker having consumed one pack per day for twenty years until he quit ten years ago." Eversole's respiratory capacity tests were within normal limits, but arterial blood gas studies showed low blood oxygen levels indicative of mild resting hypoxemia. Dr. Broudy diagnosed Eversole as suffering from mild obstructive airways disease with a borderline ventilatory defect consistent with chronic bronchitis, hypertension, and obesity. Dr. Broudy concluded that Eversole did not have pneumoconiosis, and that Eversole retained the respiratory functional capacity to perform the work of an underground coal miner.
 
 
 7
 Eversole was next examined by Dr. William Anderson on August 16, 1984, at the request of Eversole's attorney. Dr. Anderson noted a 28 year history of coal mine employment and a 22 year history of smoking one pack of cigarettes per day. The results of the pulmonary function and arterial blood gas tests performed by Dr. Anderson were not adequate to establish disability under the guidelines contained in the Act. Dr. Anderson obtained a chest x-ray, which he interpreted as negative for pneumoconiosis, but noted minimal bilateral pleural thickening. An electrocardiogram produced a normal reading. Dr. Anderson's final diagnoses were: 1) pleural thickening due to an unknown cause; 2) arteriosclerotic heart disease with exertional and paroxysmal nocturnal dyspnea; and 3) high blood pressure.
 
 
 8
 Eversole's most recent examination was performed by Glen Baker, M.D., on January 20, 1989, at the request of the Department of Labor. Dr. Baker noted a 30 year coal mine employment history and a four year smoking history. After performing pulmonary function and arterial blood gas studies and obtaining a chest x-ray, Dr. Baker diagnosed Eversole as having simple pneumoconiosis, type 1/0, chronic bronchitis caused by coal dust exposure and smoking, and chronic obstructive pulmonary disease. Dr. Baker concluded by stating that Eversole suffers from a mild to moderate pulmonary impairment.
 
 
 9
 In his decision, the ALJ noted that the claim at issue was filed on December 13, 1988, after the effective date of the permanent regulations at 20 C.F.R. Sec. 718. To be eligible for benefits under this statute, a claimant must prove by a preponderance of the evidence that: 1) he has pneumoconiosis; 2) the pneumoconiosis arose at least in part out of his coal mine employment; and 3) he has a totally disabling pulmonary or respiratory condition that is due (at least in part) to his pneumoconiosis. Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 141, 108 S.Ct. 427, 431 (1987); Adams v. Director, OWCP, 886 F.2d 818, 825 (6th Cir.1989); Gee v. W.G. Moore & Sons, 9 BLR 1-4 (1986).
 
 
 10
 The ALJ found that Eversole had established the existence of pneumoconiosis under 718.202(a)(1). On the basis of income tax records, the ALJ found that Eversole had established a coal mine employment history of nineteen years. Because Eversole proved at least ten years of work in the coal mining industry, he was entitled to the presumption of causation found in Sec. 718.203(b). Accordingly, the ALJ found that Eversole's pneumoconiosis arose out of his coal mine employment.
 
 
 11
 None of Eversole's pulmonary function tests or arterial blood gas studies qualified to establish total disability on the basis of the values listed at Sec. 718.204. Consequently, Eversole had to establish total disability under Sec. 718.204(c)(4), which requires "a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques," to conclude that Eversole's respiratory or pulmonary condition prevents him from engaging in gainful employment, requiring the skills and abilities comparable to those of his former work in the mine.
 
 
 12
 After evaluating the medical opinions of record, the ALJ concluded that Eversole had not established total disability under Sec. 718.204(c)(4) because no physician had found him to be totally disabled due to pneumoconiosis. The ALJ noted that Dr. Broudy had specifically stated that Eversole retained the functional capacity to perform his usual coal mine employment and summarized the other medical evidence as follows:
 
 
 13
 Dr. Baker found the Claimant to suffer from a mild to moderate pulmonary impairment. Drs. O'Neill and Anderson gave no opinion on whether the Claimant was totally disabled due to pneumoconiosis. The only medical report of record that comes close to establishing total disability is Dr. Bushey's and he only recommended that the Claimant have no further exposure to coal dust.
 
 
 14
 Relying on Taylor v. Evans & Gambrel Co., Inc., 12 BLR 1-83 (1988), which held a medical opinion that merely advises against a return to the dusty coal mine atmosphere without addressing the miner's physical capacity to return to work was insufficient to establish the existence of a totally disabling impairment, the ALJ denied benefits.
 
 II.
 
 15
 A decision by the Benefits Review Board must be affirmed on appeal if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's factual determinations. Director, OWCP v. Quarto Mining Co., 901 F.2d 532, 536 (6th Cir.1990). With respect to questions of law, however, this Court enjoys plenary review authority. Director, OWCP v. Saulsberry, 887 F.2d 667, 670 (6th Cir.1989).
 
 
 16
 The standards of review for the Board and this Court are the same. Welch v. Benefits Review Board, 808 F.2d 443, 445 (6th Cir.1986). Therefore the focus of review is whether the ALJ had substantial evidence on which to base his decision. Zimmerman v. Director, OWCP, 871 F.2d 564, 566 (6th Cir.1989). If the ALJ's findings are supported by substantial evidence and are in accordance with the applicable law, the ALJ's findings are conclusive. Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985). Substantial evidence is that relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 488 (6th Cir.1985). Given this limited scope of review, this Court cannot substitute its own judgment for that of the ALJ when the ALJ has carefully considered each part of the evidence. Knuckles v. Director, OWCP, 869 F.2d 996, 998 (6th Cir.1989).
 
 
 17
 Every petition for review filed with the Board must be accompanied by a supporting statement or brief which:
 
 
 18
 Specifically states the issues to be considered by the Board; presents, with appropriate headings, an argument with respect to each issue presented with references to transcripts, pieces of evidence and other parts of the record to which the petitioner wishes the Board to refer; [and contains] a short conclusion stating the precise result the petitioner seeks on each issue and any authorities upon which the petition relies to support such proposed result.
 
 
 19
 20 C.F.R. Sec. 802.211(b). This Court has recognized that the Board's procedural rules impose certain threshold requirements for alleging specific errors before the Board will consider the merits of the appeal. Cox v. Benefits Review Board, 791 F.2d 445 (6th Cir.1986). "[T]he Board has repeatedly held that a party challenging an ALJ's decision must do more than recite evidence favorable to his case, but must demonstrate with some degree of specificity the manner in which substantial evidence precludes the denial of benefits or why the ALJ's decision is contrary to law." Id. at 446. Generalized contentions of error "[are] equivalent to a request to reweigh the evidence of record, which is beyond the Board's scope of review." Fish v. Director, OWCP, 6 BLR 1-107, 1-109 (1983). In affirming the ALJ's decision in this case, the Board, citing Cox, held that "as claimant has failed to adequately raise or brief any error by the administrative law judge ... the Board has no basis upon which to review that finding" (J.App. 3).
 
 
 20
 The Board's decision in this case was based on an improper application of Cox. Although only three pages long, Eversole's brief complies with the standard set forth in 20 C.F.R. Sec. 802.211(b). The brief specifically challenges the ALJ's interpretation of the medical opinions of Dr. Bushey and Dr. Baker, regarding whether Eversole was totally disabled. Furthermore, the brief cites Board precedent and contains a conclusion which states that because of the ALJ's errors "in the critical areas of interpretation, credibility of the plaintiff, and weighing of the medical opinions," the ALJ's decision "should be overturned and this matter remanded." The Director of the Office of Workers' Compensation Programs agrees that "the Board's characterization of claimant's brief is simply wrong, and claimant's arguments are properly before this Court." (Brief for Federal Respondent at 9). Thus, the Board's denial of Eversole's petition for review was the result of a misapplication of a legal standard and should be reversed.
 
 
 21
 However, the ALJ correctly applied the regulations at 20 C.F.R. Sec. 718.204(c) in concluding that Eversole did not prove, by a preponderance of the evidence, that he is totally disabled and unable to perform his usual coal mine work or comparable work due to pneumoconiosis. While Eversole's petition to the Board challenged the ALJ's interpretation of the opinions of Drs. Bushey and Baker, in his brief to this Court Eversole challenges the ALJ's interpretation of the medical opinions of Dr. Bushey and Dr. Anderson. None of the opinions constitute substantial evidence that Eversole was unable to perform his former coal mine work.
 
 
 22
 Dr. Bushey's opinion advising Eversole to avoid further dust exposure does not amount to "substantial evidence that [he] is necessarily totally disabled from his usual coal mine work." Neace v. Director, OWCP, 867 F.2d 264, 268 (6th Cir.1989). To constitute substantial evidence of total disability, a doctor's report "needs to describe either the severity of the impairment or the physical effects imposed by claimant's respiratory impairment sufficiently so that the administrative law judge can infer that the claimant is totally disabled." Budash v. Bethlehem Mines Corp., 9 BLR 1-48, aff'd. on recon., 9 BLR 1-104 (1986). Dr. Bushey's opinion does not constitute a diagnosis of total disability because Dr. Bushey did not address the severity of Eversole's impairment or the effect of his impairment on his capacity to perform his former work.
 
 
 23
 Eversole relies on Wright v. Island Creek Coal Co., 824 F.2d 505 (6th Cir.1987) in which Judge Milburn wrote:
 
 
 24
 [w]here the medical evidence establishes that the claimant must avoid further exposure to coal dust in light of an already accrued case of pneumoconiosis, the claimant is no longer capable of performing his usual coal mine work.
 
 
 25
 Wright, 824 F.2d at 508. However, as Judge Wellford pointed out in his concurring opinion, this statement was merely dicta related to the discussion of 20 C.F.R. Sec. 727.203(b)(2); the court's holding was to affirm the employer's rebuttal of causation under 20 C.F.R. Sec. 727.203(b)(3) based on entirely different evidence from that considered in its discussion of subsection (b)(2). Even assuming, arguendo, that the statement had precedential value, Wright involved a holding by the Court of Appeals that the evidence established that the claimant "must" avoid exposure to coal dust, whereas in the instant case, Dr. Bushey merely opined that Eversole "should" avoid further exposure. Furthermore, Wright is at odds with many of this Court's recent decisions holding that a doctor's opinion advising a miner to avoid dust exposure does not constitute substantial evidence of total disability. See, e.g., Neace, supra; Zimmerman, supra; Ramey, supra; Taylor, supra; Endicott v. Black Hawk Mining Co., No. 92-3438 (6th Cir. Nov. 25, 1992); Adams v. Canada Coal Co., No. 91-3706 (6th Cir. July 13, 1992); Hensley v. Eastern Coal Corp., No. 91-3715 (6th Cir. June 8, 1992).
 
 
 26
 In addition, 30 U.S.C. Sec. 843(b) of the Federal Coal Mine Safety and Health Act of 1969 provides a specific remedy to miners who are diagnosed as having pneumoconiosis and are advised to avoid further dust exposure. That statute provides these miners the opportunity to transfer to a less dusty area of the mine with no loss of pay. Thus, the ALJ properly declined to consider Dr. Bushey's opinion as substantial evidence of total disability.
 
 
 27
 Dr. Baker concluded that Eversole suffers from a "mild to moderate" pulmonary impairment. Dr. Anderson diagnosed Eversole as suffering from "arteriosclerotic heart disease with exertional and paroxysmal nocturnal dyspnea." While these reports establish that Eversole does in fact suffer from some pulmonary impairment, they do not establish that Eversole suffers from a totally disabling pulmonary impairment as required by the Act. 20 C.F.R. Sec. 718.204(c). Neither doctor stated that Eversole's condition precluded him from performing his former work or comparable work, and Dr. Anderson did not state the level of exertion at which Eversole's breathing became difficult. In short, the ALJ was not provided with evidence from which he could legitimately infer total disability. Because Eversole's former work consisted primarily of standing and occasional minor lifting, and because he was able to sit down for three hours of an eight-hour day, the ALJ could reasonably conclude that Eversole was not totally disabled under the Act even with a moderate pulmonary impairment. This conclusion is further supported by Dr. Broudy's opinion that Eversole retained the capacity to perform his former work.
 
 
 28
 The Benefits Review Board erred in affirming the ALJ on the basis that Eversole did not adequately brief his challenge to the ALJ's findings. However, the standard of review for the Board and this Court are the same, and we find that the ALJ accorded proper weight to the medical evidence. Because the ALJ's decision was supported by substantial evidence, we AFFIRM the decision to deny benefits.
 
 
 
 *
 Honorable George E. Woods, United States District Court for the Eastern District of Michigan, sitting by designation